

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0323-11

### COREY[1] DON LOUIS, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### FANNIN COUNTY

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. MEYERS, WOMACK, and KEASLER, JJ., dissented.

### O P I N I O N

Appellant was convicted of capital murder for the death of his girlfriend's two-year-old son. Because the state did not seek the death penalty, appellant was sentenced to life imprisonment. The court of appeals determined that the evidence was legally insufficient to prove that appellant intentionally or knowingly caused the death of the child and, accordingly, reversed the capital-

---

[1] We spell appellant's first name as "Corey." While the indictment and the trial court's judgment spell his name "Cory," the docket sheet reflects that the trial court granted, without objection, the state's motion to amend the indictment to correct the spelling of the defendant's name. The indictment itself includes a handwritten, interlined "Corey" above the printed "Cory." Appellant's notice of appeal and the opinion of the court of appeals also use "Corey."

murder conviction and acquitted him of that charge. *Louis v. State*, 329 S.W.3d 260 (Tex. App.–Texarkana 2010). That court also determined that there was jury-charge error and remanded the case to the trial court for a new trial on the lesser-included offenses that had been included in the jury charge. *Id*.

We granted review of all seven grounds raised by the state prosecuting attorney's petition. Those grounds ask:

> 1. Did the court of appeals violate *Jackson v. Virginia* by not considering all of the evidence, re-assigning weight and credibility, and generally not viewing the evidence in the light most favorable to the verdict?
>
> 2. Was the evidence sufficient?
>
> 3. Is an instruction on mistake of fact appropriate when the mistaken "fact" is the result of the conduct in a result-of-conduct offense?
>
> 4. Is mistake of fact applicable to lesser-included offenses when the culpability negated by the mistaken belief applied only to the greater offense?
>
> 5. Does mistake of fact apply to the culpable mental states of recklessness and criminal negligence?
>
> 6. Is the failure to submit a mistake-of-fact instruction that merely denies the charged offense ever harmful?
>
> 7. Is instructing the jury that it may infer intent or knowledge from acts done or words spoken ever harmful, either alone or in combination with other erroneous instructions?

Although articulated in seven grounds, the state's grounds seek review on three issues asserting that: 1) the evidence is legally sufficient, 2) the trial court did not err in refusing to submit a jury instruction on the mistake-of-fact defense, and 3) any jury-charge error was harmless.

## I. Facts

The court of appeals recites the underlying facts of this case very well. *Louis v. State*, *supra*.

The record reflects that appellant lived with several children and his girlfriend, the mother of the victim. The indictment alleged that appellant intentionally or knowingly caused the death of a named child younger than six years of age by beating him about the body. The alleged beating occurred after the two-year-old boy and his four-year-old sister arose during the night and made a big mess in their home, spreading food, including mustard, mashed potatoes, dog food, and household chemicals on the floor. Upon arising that morning, appellant "disciplined" the two children for making the mess. This discipline included multiple rounds of whippings with a belt and orders that the two children remain standing facing a wall until appellant returned home from work. Appellant's girlfriend also disciplined the two children, including tying the boy's wrists to a clothes rod in a closet when he was unable to remain standing. After removing the boy from that position and putting him to bed, the mother later found him "stiff in bed–rigor mortis had set in." *Louis v. State*, 329 S.W.3d at 264. Emergency medical personnel arrived at the home, determined that the boy was already dead, and took his body to the local hospital. Later, both appellant and the mother spoke with officers about the circumstances of the child's death and made videotaped statements. Subsequently, they were both arrested and charged with offenses related to the child's death. Pursuant to a plea agreement, appellant's girlfriend plead guilty to injury to a child and to murder and was sentenced to fifty years' imprisonment in each case. She also agreed to, and did, testify at appellant's trial. Although implicating appellant in the bulk of the beating of the children, the girlfriend did admit to kicking the victim during the incident and hanging him in the closet by his wrists.

In addition to the capital murder alleged in the indictment and over appellant's objections, the jury charge also included instructions on several lesser-included offenses, including

manslaughter, criminally negligent homicide, and injury to a child, which were "submitted to [the jury] in the alternative." Also over appellant's objection, the jury charge included language that a "person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed[,]" with such language being included in the definitions portion and in the portion applying the law to the facts to the capital murder and to each of the lesser-included offenses. The trial court also overruled and denied appellant's request that the jury charge include an instruction on the defense of mistake of fact. The jury found appellant guilty of the offense of capital murder as charged in the indictment. Because the state filed a notice of its intent not to seek the death penalty, appellant was sentenced to life imprisonment.

## II. Court of Appeals Opinion

On appeal, appellant raised several points of error, including challenges to the sufficiency of the evidence to support the guilty verdict. Appellant also raised claims that the trial court committed reversible error in refusing his requested mistake-of-fact jury instruction and in including in the jury charge objected-to language that impermissibly commented on the evidence, specifically that "[i]ntent or knowledge may be inferred by acts done or words spoken."

Appellant was accused of intentionally or knowingly causing the death of a named child who was younger than six years of age by beating him about the body. Thus, the state had the burden of proving that accusation. In reviewing the evidence for sufficiency, the court of appeals considered the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Louis v. State*, 329 S.W.3d at 267. After setting out the facts of the case in great detail, the court analyzed the evidence

to determine whether it was legally sufficient to prove that appellant had the requisite *mens rea* to be convicted of capital murder which, as a result-of-conduct offense, is defined in terms of whether the perpetrator's actions were intended to produce or had a substantial certainty of producing, a specified result. *Id*. The court of appeals determined that "[n]o evidence was presented that [appellant] ever held the intention to kill [the child,]" but rather there was evidence that appellant was engaged in disciplining the children, "albeit to an excessive, horrific, and cruel degree." In its opinion, the court of appeals pointed out that even a police-officer witness did not think that appellant intended to cause the child's death and believed that the death was accidental. *Id*. at 268. The court of appeals likewise determined that there was no evidence that appellant was aware that his spanking of the child was reasonably certain to cause the child's death. *Id*. at 269. It noted that all of the evidence pointed to appellant and the mother "doing what they did with the intent to discipline the children, but not attempting to kill them or to engage in conduct they knew was reasonably certain to kill them." *Id*. Thus the court concluded that there was "simply no evidence that [appellant] knowingly killed [the child] as 'knowingly' is defined in the Texas Penal Code." *Id*. at 270. Accordingly, the court rendered an acquittal for capital murder, found "harmful jury error," and remanded for a new trial on the lesser-included offenses that had been included in the original jury charge. *Id*. at 270 and n.7.

### III. State's Grounds for Review

The state's first two grounds complain about the court of appeals' determination of insufficient evidence. Ground one asks whether the court of appeals violated *Jackson v. Virginia* in its sufficiency review, while ground two asks whether the evidence was sufficient. We follow *Jackson v. Virginia*, 443 U.S. 307 (1979), as the standard for reviewing the sufficiency of evidence.

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). The court of appeals properly noted that standard. *Louis v. State*, 329 S.W.3d at 267.

The state argues that the evidence is sufficient for a rational juror to find beyond a reasonable doubt that appellant intentionally or knowingly killed the victim. It asserts that "[t]he severity and repetition of the beating, the use of an implement, and the diminutive size of the victim all support the inference that appellant's conduct was reasonably certain to cause death." The state acknowledges that the court of appeals cited the proper standard of review, noted the relevant law on the inference of intent, and mentioned its duty to defer to the jury's determinations of weight and credibility. But the state also contends that the court of appeals "ignores this duty by only assigning weight to the testimony contrary to the verdict and by failing to mention important evidence that supported the jury's rational inferences."

The state also questions the court of appeals's reliance on, and acceptance of, appellant's out-of-court statements and the testimony of witnesses who believed appellant. It asserts that, viewed in the light most favorable to the verdict, the jury could have credited appellant's admissions of conduct and rejected any statement or testimony denying intent or knowledge. It also points out, that while correctly noting that intent may be inferred from the extent of the injuries and the relative size and strength of the parties, the court of appeals "never mentioned or apparently considered that the asthmatic victim was almost three feet tall but weighed only 21 pounds." The state also asserts that,

since the injuries from the "spanking" stretched from the victim's thighs to marks that ran like a railroad track on his back, a reasonable inference is that appellant knew what he was doing when he engaged in three rounds of beatings "of this tiny child." The state also suggests that the testimony, if believed, that appellant wanted to beat the victim more later that day after he returned home from work "is as much evidence of appellant's expectation that the victim was not going to die as it is his sadistic nature."[2]

The state criticizes the court of appeals for not finding that the type of belt used to administer the injuries was especially germane to determining appellant's mental statute and argues that "the fact that appellant used a leather belt [instead of his bare hand] on a twenty-one-pound child . . . is relevant to determining how much bodily injury he intended to inflict or knew was reasonably certain to result." The state also asserts that "[t]he use of the belt would be relevant if only because appellant initially lied about using it and exhibited nervousness when it was found" and again criticizes the court of appeals for noting these facts while giving them no moment. The state also observes that the court of appeals wrote that appellant called the children "coarse names." The state asserts that those words do not appear in the court of appeals's analysis of appellant's mental state, although the record reflects that appellant was not on any controlled substances at the time and "so any words and actions accurately reflect his intent." The state also insists that, viewed in the light most favorable to the verdict, the medical evidence supports a finding that it was appellant's actions that killed the child, which in turn, supports inferential intent or knowledge attributable to appellant alone.

---

[2] This argument seems to be counter to the state's arguments about appellant's intent to kill the child, as it indicates that appellant expected the child to be alive later in the day and so did not intend to kill the child.

Appellant asserts that the state did not produce any evidence demonstrating that he ever held the intention to kill the child, nor was there any evidence that, with respect to the nature of his conduct or to the circumstances surrounding his conduct, that he was aware that his conduct was reasonably certain to cause the death of the child. Appellant points out that he told police he was spanking the children as punishment for having made a mess in the house, and the mother's version of events corroborated this. He notes that an officer who questioned appellant did not think appellant intended to cause the child's death but rather believed that the death was accidental. He also asserts that there was nothing in the testimony of the two child witnesses, who were also present when the punishment took place, to suggest that he was engaged in anything more than disciplining the children, albeit to an excessive degree.

Appellant also argues that there was no evidence that he was aware that his "spanking" the child was reasonably certain to cause the child's death, thus there was insufficient evidence to support a finding that he knowingly caused the child's death. He points out that appellant's statements to police that he was disciplining the children and expressed an intention to resume the "discipline" when he returned home from work indicates that he believed the child would be alive when he returned. He also notes the importance of the mother's testimony that she thought appellant's "spanking" was what a normal parent would do and that he spanked them like he always did and that she believed appellant was simply engaging in a normal act of child discipline. He suggests that this evidence further reflects that this was considered customary child discipline in that household, thus there is no inference that appellant was reasonably certain death would result from his conduct. Appellant also points out that both he and the mother had charge of the children, and there is evidence that she continued the abuse of the victim after appellant left for work. We observe

that the medical examiner who performed the autopsy of the child testified that the cause of death was homicidal violence including blunt-force injuries, but could not pinpoint exactly which injury was fatal and caused the death. She testified that she could not "just take one of those bruises out," but rather had "to do everything in totality"; "it's all of the various bruises combined." Because she had a medical history that indicated that the child had been hung by his wrists in a closet, the medical examiner also included asphyxia, along with the multiple blunt-force injuries, as a possible cause of death. The medical examiner was unable to determine whether the child's death was caused specifically by the actions of appellant or of the mother.

The state correctly contends that the court of appeals's analysis is flawed because "the credited evidence supporting acquittal comes from appellant's out-of-court statements and his accomplice." The court of appeals failed to defer to the jury's role as the fact finder that exclusively determines the weight and credibility of evidence. *See Wirth v. State*, 361 S.W.3d 694 (Tex. Crim. App. 2012). By applying its own common-sense understanding of the parameters of parental discipline, the jury could have reasonably disregarded all of the evidence purporting that appellant believed this was appropriate discipline. The court of appeals should have deferred to that credibility assessment by the jury because it was the exclusive fact-finder. *See id*.

By considering facts that the jury could have reasonably disregarded, the court of appeals misapplied the standard for sufficiency of the evidence of capital murder. "Capital murder is a result-of-conduct offense; the crime is defined in terms of one's objective to produce, or a substantial certainty of producing, a specified result, i.e. the death of the named decedent." *Robles v. State,* 273 S.W.3d 322, 329 (Tex. Crim. App. 2008). The pertinent question, therefore, is whether the jury could have rationally determined beyond a reasonable doubt from the totality of the circumstantial

evidence viewed in a light most favorable to its verdict that appellant had intent to cause the death of the child. *See Jackson*, 443 U.S. at 318; *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

Viewing the evidence in a light most favorable to the jury's verdict, the record reflects that appellant repeatedly struck a two-year-old child with a leather belt over a large area on the child's thighs, buttocks, and back. The injuries to the child's upper thighs and buttocks caused "extensive hemorrhaging" and contributed to his death, which was caused by a combination of the acts by appellant and the child's mother. No evidence, however, shows that appellant knew that, after he left the house, the child's mother would repeatedly strike the child's head and hang him by his arms in a closet. Additionally, no evidence shows that appellant struck the child anywhere other than his buttocks, thighs, and back, nor did he use a weapon other than a leather belt. From the evidence presented to it–the description of the area where the child was struck, the use of a belt as the only weapon, and the absence of any evidence showing that the child could or would have died from the injuries caused by appellant alone–the jury could not have reasonably inferred that appellant intended to cause the death of the child. The injuries caused by appellant became fatal in combination with the later injuries separately caused by the child's mother, who independently struck the child's head repeatedly and hung him from his arms in a closet. Although we disagree with its analysis, the court of appeals properly determined that the jury could not have inferred from the totality of the circumstantial evidence viewed in a light most favorable to its verdict that appellant intended to cause the death of child. We therefore overrule grounds one and two.

Grounds three, four, and five assert that the trial court did not err in refusing to submit a jury instruction on the mistake-of-fact defense. The state insists that "[u]nder no circumstances was

mistake of fact applicable in this case." Ground six suggests alternatively that the failure to submit a mistake-of-fact instruction "that merely denies the charged offense" is never harmful.

In addressing appellant's complaint about the trial court's denial of a mistake-of-fact instruction, the court of appeals discussed *Thompson v. State*, 236 S.W.3d 787 (Tex. Crim. App. 2007). The court of appeals noted that, in *Thompson*, a case involving charges of causing serious bodily injury to a child, a first-degree felony, and bodily injury to a child, a third-degree felony, "Thompson's intent to cause bodily injury was found to transfer to his having caused serious bodily injury." *Louis v. State*, 329 S.W.3d at 271 (citing *Thompson v. State*, 236 S.W.3d at 800). The court of appeals also noted that this Court stated in *Thompson* that, under the circumstances of the case, Thompson would have been entitled to a mistake-of-fact instruction had he requested one. *Id*. The court of appeals pointed out that appellant's jury charge included transferred intent language eight times: in the portion of the charge for capital murder and thereafter for each of the seven lesser-included offenses. "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed." *Id*. at 272. Because the facts of *Thompson* are similar to the facts in appellant's case–that he intended to discipline the child, an action which would clearly entail bodily injury as defined by statute–the court of appeals held that appellant was entitled to the mistake-of-fact instruction that he requested at trial but was denied. *Id*.

The state insists that "[t]he applicable language in *Thompson* was dicta, was wrongly decided, and is unsupportable in application." It specifically purports to be "deconstructing *Thompson*" and suggests that some of *Thompson*'s reasoning is circular. The state also argues that the mistake-of-fact charge under Texas Penal Code § 8.02(a) requires the defendant to produce a fact

about which he was mistaken, rather than simply denying the requisite mental state. The state also asserts that the mistake-of-fact charge that appellant requested did not apply to all of the lesser-included offenses that were submitted in the jury charge. It also argues that mistake of fact is never applicable to the culpable mental state of criminal negligence.

Appellant recognizes that, while the facts of this case are similar to those in *Thompson*, in this case he did request a mistake-of-fact instruction and asserts that the court of appeals's reliance on *Thompson* was appropriate. Appellant argues that, because the trial court instructed the jury that it should find him guilty if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed, the evidence raised an issue as to mistake of fact, and such an instruction should have been included in the jury charge as he had requested.

"It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different offense was committed[.]" TEX. PENAL CODE § 6.04(b)(1).

Although the trial court denied appellant's request that a mistake-of-fact instruction be included in the jury charge, it included, over appellant's objection, a transferred-intent instruction in the definitions section of the jury charge and in the application sections regarding the capital murder and each of the lesser-included offenses. We held in *Thompson*, 236 S.W.3d at 789, that a defendant who is subject to a transferred-intent provision is entitled, upon request, to a mistake-of-fact instruction. Appellant was indeed subjected to such an instruction, thus upon his request, he was

entitled to have a mistake-of-fact instruction included in the jury charge. The court of appeals properly held that appellant was entitled to the mistake-of-fact instruction that he requested but was denied at trial.

The mistake-of-fact defense is broadly worded and not limited to transferred-intent situations. In this case, however, an instruction on the transferred-intent doctrine was included in the jury charge, even though it may not have been applicable to the capital murder, as we have held that capital murder is a result-of-conduct offense. *See e.g., Roberts v. State*, 273 S.W.3d 322, 329 (Tex. Crim. App. 2008). And in *Thompson*, 236 S.W.3d at 799-800, we noted that capital murder contains what appears to be a sort of anti-transfer element; thus transferring intent from those lesser offenses to capital murder would be impermissible.

Besides the primary offense of capital murder, in this case the jury charge included multiple lesser offenses such as intentionally or knowingly causing serious bodily injury to a child and intentionally or knowingly causing bodily injury to a child. The transferred-intent doctrine could be used to transfer intent from the bodily injury offense to the serious bodily injury offense, but the mistake-of-fact defense would prevent such a transfer if the defendant had a reasonable, but mistaken, belief that he was inflicting only bodily injury. *Thompson v. State*, 236 S.W.3d at 793. Because the transferred-intent instruction was applied to all of the offenses in the jury charge and authorized conviction of each specific offense, if causation were transferred pursuant to § 6.04, the mistake-of-fact instruction was needed to permit the jury to negate the transferred intent if the jury believed that appellant had a reasonable mistaken belief about the type of injury he was inflicting.[3]

---

[3] Appellant asserts that, despite giving the jury eight offenses to choose from, by giving the jury the transferred-intent instruction, the trial court was, in essence, telling jurors that, even if they believed he intended only to injure the child, which would cause the jury to have convicted him of one of the lesser-included offenses, "they

Based upon the court of appeals's correct application of *Thompson* as to the circumstances of this case, we agree with its conclusion that appellant was entitled to the mistake-of-fact instruction that he requested but was denied. *Louis v. State*, 329 S.W.3d at 272. Grounds three and four and five are overruled.

Grounds six and seven question the court of appeals's finding of harm after finding jury-charge error. Ground six asserts that the failure to submit a mistake-of-fact instruction "that merely denies the charged offense" is never harmful. The state opines that, "[i]f transferred intent was properly applied in this case and appellant was entitled to a mistake of fact instruction based on the result of conduct, a defendant does not suffer even 'some harm' when he is denied an instruction that is nothing more than a denial." It also suggests that a jury's finding of guilt beyond a reasonable doubt that a defendant did intend or know the result of his actions was necessarily a rejection of his defense that he did not, and consequently, refusing to submit a superfluous "mistake-of-result" (sic) instruction, if error, is always harmless. The state also notes that appellant clearly wanted the mistake-of-fact instruction to apply to the capital-murder charge, but did not ask that it be applied to any of the lesser-included offenses.

Appellant did request that a mistake-of-fact instruction be included in the jury charge. The court of appeals properly analyzed the harm from the jury-charge error under the well-established standards of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)(op. on reh'g). It pointed out that, because appellant had objected to the jury-charge language, *Almanza* requires reversal if, after taking into consideration all of the evidence, the entire jury charge, and the parties' arguments, the

should [nevertheless] convict him of murdering the child, because the 'only difference between what actually occurred' and what appellant 'desired, contemplated or risked, was a different offense.'"

court of appeals finds "some harm" to appellant's rights. *Louis v. State*, 329 S.W.3d at 271, 272. After conducting the appropriate analysis, the court of appeals determined that it could not say that the jury-charge errors did not cause "some harm" to appellant. "[Appellant's] mental state was a hotly contested issue" and his "primary defense relied upon the position that he did not know that his 'spankings' were sufficiently severe to result in the child's serious bodily injury or death." "The failure to instruct the jury on the defense of mistake of fact was an impediment to [appellant's] ability to present his defense that he did not have the requisite *mens rea* to be found guilty and to argue that defense to the jury." *Id*. at 271, 273. Lack of the requested instruction effectively prevented appellant from presenting his defense and is not harmless. *Hall v. State,* 225 S.W.3d 524 (Tex. Crim. App. 2007). Accordingly, we overrule ground six.

Ground seven asserts that erroneously submitting an instruction that the jury may use to infer intent or knowledge from acts done or words spoken is never harmful. In light of our decision on ground six, which affirms the court of appeals's finding of "some harm" from the absence of a mistake-of-fact instruction, we do not address a complaint that submission of an inference instruction is never harmful and dismiss ground seven.

Having overruled grounds one through six and dismissed ground seven, we affirm the judgment of the court of appeals.

Delivered: June 6, 2012
Publish