

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00440-CR**

| | | |
|---|---|---|
| Earnest Ross | § | From the 158th District Court |
| | § | of Denton County (F-2008-1959-B) |
| v. | § | January 4, 2013 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in part of the trial court's judgment. We affirm the trial court's judgment of conviction, but reverse the trial court's judgment as to punishment and remand this case for a new trial on punishment only.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS
FORT WORTH**

**NO. 02-11-00439-CR
NO. 02-11-00440-CR**

EARNEST ROSS                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                 STATE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I.    Introduction

Appellant Earnest Ross appeals his convictions for engaging in organized criminal activity and unlawful possession of a firearm by a felon.  We affirm in part and reverse and remand in part.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

In the State's earlier appeal in this case of the trial court's order partially granting Ross's motion to suppress evidence, we set out the factual background that ultimately led the jury to convict Ross of unlawful possession of a firearm by a felon and engaging in organized criminal activity. *See State v. Ross*, Nos. 02-09-00109-CR, 02-09-00110-CR, 2010 WL 87427, at *1–2, 5 (Tex. App.—Fort Worth Jan. 7, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding that the trial court erred by suppressing evidence located in a locked suitcase found in the trunk of the vehicle Ross was driving).

During trial, the State offered Ross's 1981 burglary conviction as a predicate for the unlawful possession of a firearm by a felon charge and as an enhancement on the organized crime charge, and it offered a parole report and oral testimony to show that Ross had been discharged less than five years before his arrest in this case. During the charge conference, the State proposed a charge containing a "joint possession" definition because multiple people had access to the firearms in question; Ross objected to the inclusion of this definition as non-statutory.

The jury convicted Ross, and during the first day of Ross's punishment trial, the trial court ordered that Ross be handcuffed and shackled. The trial court observed that Ross's handcuffs became visible when he stood. The jury assessed Ross's punishment at twenty years' confinement for the unlawful

possession of a firearm by a felon conviction and fifty-five years' confinement for the engaging in organized crime conviction. These appeals followed.

### III. Sufficiency

In his fifth point, Ross complains that the evidence is insufficient to support his conviction for unlawful possession of a firearm by a felon under penal code section 46.04. In our due process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Although Ross bases his complaint on what he argues in his first, second, third, and fourth points was the inadmissibility of his 1981 conviction and the parole report, we must consider all of the evidence admitted at trial, even improperly admitted evidence, when performing a sufficiency review. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). We must do so even in a case that we reverse and remand because of error in the admission of evidence. *Moff*, 131 S.W.3d at 490.

As set out in the penal code and authorized by the indictment, it is unlawful for a person previously convicted of a felony to possess a firearm after conviction and before the later of the fifth anniversary of the person's release from confinement following the conviction or the person's release from supervision

4

under community supervision, parole, or mandatory supervision. Tex. Penal Code Ann. § 46.04 (West 2011). The penal code defines "possession" as "actual care, custody, control, or management," *id.* § 1.07(39) (West 2011 & Supp. 2012), and declares that "[p]ossession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control," *id.* § 6.01 (West 2011). To support Ross's conviction, the State had to prove that Ross intentionally or knowingly possessed a firearm. The penal code defines an "intentional" act as acting with the "conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a) (West 2011). Finally, the penal code declares that a person acts "knowingly . . . with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist" and that a person acts "knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b).

Here, the record reflects that the State presented evidence that Ross was convicted of felony burglary in 1981. Jimmy Watkins, Ross's probation officer, testified that Ross was released from community supervision on January 27, 2006, within five years of June 16, 2008, when police arrested him and found four firearms in his car. Among the four firearms found in Ross's car was a Heckler & Koch pistol that, according to Courtney Farmer, Devin Stephen, and Nicholas Porter's testimony, Ross had modified and carried on numerous

5

occasions. Viewing all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of unlawful possession of a firearm by a felon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We overrule Ross's fifth point.

Furthermore, the trial court did not abuse its discretion by admitting the 1981 conviction. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006) (setting out standard of review for admission of evidence). Although in his first two points, Ross complains that the 1981 conviction was void for lack of jurisdiction and that his substantial rights were violated when the trial court admitted it during the guilt phase of his trial, the State introduced a pen packet that contained a copy of the 1981 judgment and Ross's fingerprints and photo, and connected the pen packet to Ross by expert testimony. After Ross complained that the pen packet listed his birthday incorrectly, the State obtained and offered the original file from the 1981 conviction. Although the file did not contain the juvenile court's certification order, it contained the State's motion for an examining trial recounting the events leading up to Ross's transfer from juvenile court to the district court and the motion for the examining trial transcript, in which Ross's counsel at the time stated, "This Defendant was certified as an adult to stand trial in the above entitled and numbered cause." In response to the State's evidence, Ross offered nothing to show that he had not been certified as an adult before his 1981 trial.

6

Although there is no "presumption of regularity" when a defendant attacks a juvenile transfer on direct appeal, which requires the State to prove that the jurisdictional transfer requirements were met, *See White v. State*, 576 S.W.2d 843, 845 (Tex. Crim. App. 1979), when a defendant collaterally attacks a prior conviction, the State has only the initial burden to produce prima facie proof of a valid prior conviction. *Johnson v. State*, 725 S.W.2d 245, 247 (Tex. Crim. App. 1987); *see also* Tex. Fam. Code Ann. §§ 51.02, 51.04, 54.02 (West 2008 & Supp. 2012) (setting out the procedure for a juvenile court to transfer jurisdiction to a district court). "Once the State properly introduces a judgment and sentence and identifies appellant with them, we presume regularity in the judgments," and the defendant then has the burden to "make an affirmative showing of any defect in the judgment." *Johnson*, 725 S.W.2d at 247. To prevail, the defendant must prove that the prior conviction is void or "tainted by a constitutional defect." *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979).

Because the State's evidence provided prima facie proof of Ross's 1981 conviction, *see Johnson*, 725 S.W.2d at 247 (noting that a pen packet containing a judgment, sentence, and fingerprints was sufficient to establish that the defendant's prior conviction as a juvenile was "regular on its face"), and because Ross then did not affirmatively show any defect in the judgment, the trial court did not abuse its discretion by admitting the 1981 conviction. *See id.* Further, although Ross argues that he received no limiting instruction on the 1981 conviction, the record does not reflect that he requested one, although it does

7

reflect that one was included in the jury charge. We overrule Ross's first two points.

Likewise, Ross was not harmed by the admission of the parole report although he complains in his third and fourth points that the report lacked sufficient indicia of reliability or trustworthiness and violated his right to confrontation under the Sixth Amendment. Assuming without deciding that the trial court abused its discretion by admitting the parole report, the State also offered testimony from Jimmy Watkins, Ross's parole officer, to prove that Ross was released from community supervision on January 27, 2006, within five years of his arrest in this case on June 16, 2008. Although Ross argues that Watkins's testimony is insufficient to support the trial court's ruling admitting the report because Watkins could not explain the computations that kept Ross under the State's supervision until 2006, penal code section 46.04(a) requires only that the firearm possession occur within five years of the defendant's release from supervision; it contains no requirement that the State explain the manner in which the supervision period was calculated. *See* Tex. Penal Code Ann. § 46.04(a). Because an erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling, *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)), *cert. denied*, 131 S. Ct. 905 (2011); *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (outlining constitutional harm analysis factors that

assess the importance of erroneously admitted out-of-court statements in light of other admissible evidence and the strength of the State's case), we overrule Ross's third and fourth points without reaching his constitutional and hearsay complaints.[2] *See* Tex. R. App. P. 47.1.

## IV.  Jury Charge

In his seventh, eighth, tenth, and eleventh points, Ross complains that the trial court erred by instructing the jury that his firearm possession need not be exclusive because this instruction had no basis in the penal code and because it constituted an impermissible comment on the weight of the evidence.

When Ross was arrested, police found four firearms in his car:  a Heckler & Koch .40-caliber pistol, a Smith & Wesson .40-caliber pistol, a Walther .22-caliber pistol, and a SKS assault rifle.  Police later found two shotguns in Stephen's home, where Ross had temporarily stayed.  At the charge conference, the State proposed a jury charge containing a "joint possession" definition because the evidence showed that others had access to the firearms, including Stephen, who was arrested with Ross and who acknowledged in federal court that he had possessed some of the firearms, and Ross's wife, who owned the car

---

[2]Likewise, we need not reach Ross's sixth and ninth points, in which he complains that the trial court erred by not instructing the jury on age affecting criminal responsibility under penal code section 8.07(b) because, in light of our resolution of his first through fifth points, section 8.07(b) is not the law applicable to the case.  *See* Tex. Penal Code Ann § 8.07(b) (West 2011) (prohibiting criminal prosecution of a juvenile unless the juvenile is certified as an adult); Tex. R. App. P. 47.1.

9

Ross was driving at the time he was arrested. Ross objected that the State's proposed jury instruction had no basis in the penal code.

Based on its reading of *Duncan v. State*, 680 S.W.2d 555 (Tex. App.— Tyler 1984, no pet.) (holding that a "joint possession" instruction was proper despite that fact that it deviated from the indictment), the trial court overruled Ross's objection and included a "joint possession" definition in the jury charge.[3] The jury charge stated:

> "Possession" means actual care, custody, control, or management.

> You are further instructed that possession of the alleged firearms need not be exclusive, and evidence which shows that the defendant jointly possessed it with another is sufficient. The mere presence of the defendant at a place where the alleged firearms are possessed does not, in itself, justify a finding of joint possession.

## A. Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error did occur, whether it was preserved determines the degree of harm required for reversal. *Id.*

---

[3]The question of whether the "joint possession" instruction was an improper non-statutory instruction or an improper comment on the weight of the evidence was not before the court in *Duncan*. *See* 680 S.W.2d at 560.

10

Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Louis v. State*, No. PD-0323-11, 2012 WL 2007632, at *8 (Tex. Crim. App. June 6, 2012) (noting that the jury charge harm analysis standards under *Almanza* are well-established). In other words, a properly preserved error will require reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171.

In making the harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see generally Hutch v. State*, 922 S.W.2d 166, 172–74 (Tex. Crim. App. 1996). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## B. Analysis

In a felony case tried to a jury, the judge shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). Generally, if a jury-charge instruction is not derived from the penal code, it is not "applicable law" under article 36.14. *Kirsch*,

11

357 S.W.3d at 651 (quoting *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)).

On appeal, Ross claims that the non-statutory "joint possession" instruction is akin to the non-statutory "affirmative links" instruction rejected in *Deener v. State*, 214 S.W.3d 522, 529–30 (Tex. App.—Dallas 2006, pet. ref'd). The court in *Deener* held that the "affirmative links" doctrine is not a legal rule but rather a shorthand expression of what must be proven for knowing or intentional possession. *Id.* (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

### I. Penal Code

The penal code defines possession as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(39) (West Supp. 2012). The penal code, however, does not define "joint possession." Rather, "joint possession," like "affirmative links," is a rule for assessing evidentiary sufficiency. *See Gordon v. State*, No. 02-11-00413-CR, 2012 WL 4121147, *2 n.14 (Tex. App.—Fort Worth Sept. 20, 2012, no. pet. h.) (mem. op., not designated for publication) (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986), for the proposition that proof of joint possession is sufficient to prove possession). "Texas courts are forbidden from instructing the jury on any presumption or evidentiary sufficiency rule that does not have a statutory basis." *Brown v. State*, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003), *cert. denied*, 124 S. Ct. 1678

12

(2004). Thus, the trial court erred by including the "joint possession" definition in the jury charge. *See id.*

## II. Harm Analysis

Because Ross preserved this error, we must reverse the trial court's judgment on the unlawful possession of a firearm by a felon conviction if we find some harm. *See Almanza*, 686 S.W.2d at 171.

The record indicates that "joint possession" was a major theme in the State's case against Ross. Indeed, the State first mentions the concept during voir dire, when it asked, "What about the concept of joint possession, two or more people can actually possess the same thing?" During direct examination of Denton County Deputy Sheriff Davis, the State asked, "[C]an two or more people possess the same item?" When Davis responded "[a]bsolutely," the State asked, "Is that also known as joint possession?" Again, on direct examination of federal agent Patterson, the State asked, "Are you familiar with the term joint possession?" Finally, the State said in its closing argument, "Because Devin Stephen pled guilty to the two shotguns in no way, shape, manner or form prevents Earnest Lynn Ross from possessing those same shotguns. That is why you have a charge in there about joint possession." The record indicates,

however, that the State primarily discussed "joint possession" when addressing the two shotguns found in Stephen's home.[4]

Further, the record indicates that Ross was seen on numerous occasions with the Heckler & Koch .40-caliber pistol that police found in his car. When asked about the computer bag found in Ross's car, Farmer testified that he knew the bag because Ross often carried either the Heckler & Koch or the Walther pistol in it. Farmer also testified that Ross carried the pistol during a home invasion that the two conducted on May 15, 2008. Stephen testified that he found the pistol in his house after Ross started staying there and that he admonished Ross to remove the gun, at which point Ross put the pistol in his car. Finally, Porter testified that Ross brought the pistol to him twice in order to have a flashlight mounted to it.[5]

The State indicted Ross on two separate counts of unlawful possession of a firearm by a felon. The first count was for three of the firearms found in his car on June 16, 2008, which included the Heckler & Koch pistol. The second count was for the two shotguns found in Steven's home. The jury charge on both counts contained a "joint possession" definition. Despite this language, the jury

---

[4]The sole exception occurred when the State examined Patterson after Ross cross-examined him on both the shotguns and the firearms found in Ross's car.

[5]Although Porter testified that the pistol was a Heckler & Koch .45-caliber pistol, he positively identified the .40-caliber pistol in court as the one that Ross brought to his store.

14

found Ross not guilty of possession of the shotguns in the second count. Further, the jury charge on the first count permitted the jury to find Ross guilty of possessing any one of the three firearms in question.

Given that the jury found Ross not guilty of possessing the shotguns despite the State's emphasis on Ross and Stephen's joint possession and considering the evidence showing that Ross modified and regularly carried the Heckler & Koch pistol, we hold that the trial court's error of including a "joint possession" instruction was harmless, *see id.*, and we overrule Ross's tenth point.

### III.    Impermissible Comment on the Weight of the Evidence

Ross claims for the first time on appeal that the "joint possession" instruction was also an improper comment on the weight of the evidence. However, because we hold that the trial court's error of including the "joint possession" definition was harmless, we need not also address whether this unpreserved error resulted in egregious harm. *See Hutch*, 922 S.W.2d at 171; *see also* Tex. R. App. P. 47.1.  Therefore, we overrule Ross's eighth and eleventh points.

### V.    Shackles

In his twelfth and thirteenth points, Ross complains that the trial court abused its discretion by requiring him to appear in shackles on the first day of his punishment trial.

15

Once convicted, Ross appeared in court for the punishment trial wearing handcuffs, a belly strap, and leg shackles. Before the jury entered, Ross's attorney objected to the restraints and pointed out that Ross's position at counsel table placed the restraints in full view of the jurors as they entered the courtroom. In response to Ross's objection, the trial court declared only that Ross would remain shackled in the interest of security. After a series of negotiations, the trial court agreed to place exhibits in front of the counsel tables to obscure the jury's view of Ross's leg shackles. Despite the obstructions, Ross's handcuffs were visible when he stood. The trial court suggested that Ross not stand when the jury entered the courtroom, but Ross's attorney rejected the court's suggestion out of respect for the jury. The trial court overruled Ross's objections and conducted the first day of the punishment trial.

Upon the State's request, when the punishment trial resumed on the second day, the trial court clarified its reasoning for requiring Ross to appear in shackles. The trial court said:

> I've taken into consideration the defendant's prior conviction for a burglary of a habitation that involved a rape. I have taken into consideration the aggravated assault which involved a death of the victim, the numerous allegations of home invasions involving violence, the extraneous offenses and allegations regarding shootings at police officers. Taking that into consideration and taking into consideration that I have to provide for the safety of the court personnel in here, along with assistance, obviously, from the sheriff's department, I believe it's in everyone's interest, especially given that the defendant was convicted and that he's potentially looking at a sentence that will not allow him to ever return back onto the streets, that we exercise caution. I have tried to minimize the impact of such by covering the bottom portion of the counsel tables,

16

> both defense and state. The handcuffs are not wholly obvious, although when he does stand, they do become apparent.
>
> Taking all of that into consideration and this jury has convicted him, the fact that he's still dressed out in appropriate street clothes and has the appearance of a professional, I determined that he should be kept in the additional layer of safety for the court and all the individuals within the court.

At that point, Ross called the transport officer, who testified that, despite being classified as an escape risk, Ross had behaved well while being transported to and from jail. After Ross reissued his objection to the shackles, the trial court agreed to remove Ross's handcuffs and belly strap.

## A. Standard of Review

We review a trial court's decision to shackle a defendant in two stages. *Long v. State*, 823 S.W.2d 259, 282–83 (Tex. Crim. App. 1991) (citing *Clark v. State*, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986)), *cert. denied*, 112 S. Ct. 3042 (1992). First, we determine whether the trial court abused its discretion by ordering the defendant shackled. *Id.* at 282. Next, if we find that the trial court abused its discretion, we determine whether the defendant suffered reversible harm. *Id.* at 283.

## B. Abuse of Discretion

Shackling a defendant is "inherently prejudicial." *Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S. Ct. 1340, 1345 (1986). Although the presumption of innocence generally does not apply at the punishment phase, the trial court must still maintain the defendant's due process right to a meaningful defense and

17

conduct dignified proceedings. *Deck v. Missouri*, 544 U.S. 622, 632, 125 S. Ct. 2007, 2014 (2005). Thus, courts may not routinely require defendants to appear in shackles before a jury during either the guilt or punishment phase of trial, but exceptional circumstances may demand that a trial court shackle a defendant. *See id.* at 628–29, 125 S. Ct. at 2011–12; *Long*, 823 S.W.2d at 283. "Examples of exceptional circumstances warranting shackling include situations in which the accused has a history of escape, expressed an intent to escape, threatened physical violence, assaulted persons in the courtroom, and repeatedly interrupted court proceedings." *Keith v. State*, 294 S.W.3d 352, 355 (Tex. App.—Eastland 2009, no pet.). When a trial court determines that it must shackle a defendant, it must make case-specific findings of fact justifying the use of shackles. *Deck*, 544 U.S. at 633, 125 S. Ct. at 2014–15. Further, the "record must clearly and affirmatively reflect the trial judge's reasons [for shackling the defendant]." *Long*, 823 S.W.2d at 282.

In *Deck*, the defendant was shackled in view of the jury during voir dire and trial on his punishment. 544 U.S. at 625, 125 S. Ct. at 2010. The trial court justified shackling Deck because he had been convicted. *Id.*, 125 S. Ct. at 2010. The Supreme Court held that the trial court's explanation was insufficient. *Id.* at 634, 125 S. Ct. at 2015. Further, the Court noted that after keeping Deck's shackles out of the jury's view during the guilt phase, the trial court inexplicably chose to discontinue this practice once Deck was convicted. *Id.*, 125 S. Ct. at 2015. Consequently, the Court held that the shackles violated Deck's due

18

process rights and that the State had to prove beyond a reasonable doubt that the error did not contribute to the verdict. *Id.*, 125 S. Ct. at 2015.

In *Marquez v. State*, the defendant was shackled during the punishment phase of the trial. 725 S.W.2d 217, 228 (Tex. Crim. App. 1987), *cert. denied*, 484 U.S. 872 (1987), *overruled on other grounds by Moody v. State*, 717 S.W.2d 910, 918–19 (Tex. Crim. App. 1992). In its findings of fact, the trial court noted that after conviction the defendant had threatened escape and suicide, attacked a cameraman, and threatened a prosecutor. *Id.* at 228. The court of criminal appeals held that the trial court did not abuse its discretion by shackling the defendant because it sufficiently detailed the special circumstances warranting the shackles. *Id.* at 230.

Like the visible shackles in *Deck*, the trial court in this case noted that Ross's handcuffs were visible when he stood. *See* 544 U.S. at 634, 125 S. Ct. at 2015. Although the record is silent on whether Ross actually stood up each time the jury entered, we assume he did so based on his objection to the trial court's suggestion that he remain seated in order to obscure the jury's view of his handcuffs. The trial court's justification included Ross's current and prior convictions, similar to the trial court's justification in *Deck*. *See id.*, 125 S. Ct. at 2015. In contrast to the defendant's outbursts and threats noted in the *Marquez* findings, the trial court noted no behavioral issue with Ross. *Cf. Marquez*, 725 S.W.2d at 228. In fact, the transport officer even testified to Ross's exemplary behavior. The only potential issue noted in the record was Ross's classification

19

as an escape risk. Indeed, once the transport officer testified to Ross's good behavior, the trial court partially rescinded its prior order and ordered Ross's handcuffs and belly strap removed while leaving Ross's leg shackles in place.

Given that Ross's handcuffs were visible to the jurors when he stood as they entered the courtroom and given that the trial court identified no special circumstance warranting the shackles, we hold that the trial court abused its discretion by ordering Ross shackled during the punishment phase of the trial. *See Deck*, 544 U.S. at 634, 125 S. Ct. at 2015.

## C. Harm Analysis

Unnecessarily shackling a defendant appearing before a jury violates the defendant's constitutional due process rights. *Id.* at 627, 125 S. Ct. at 2011.

Because this error is constitutional, we apply rule 44.2(a). Tex. R. App. P. 44.2(a). The question is whether the trial court's order requiring Ross to appear in shackles before the jury at his punishment trial was harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook*

20

*v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

The State argues that the error was harmless because nothing in the record reflects that any jury member actually saw Ross's shackles. However, the trial court and Ross's attorney stated that Ross's handcuffs were visible when he stood. Thus, we cannot say from the record that the jurors did not see the handcuffs.

Ross argues that the State impliedly emphasized the trial court's error by asking the jury to impose a harsh sentence on Ross. This, however, was a proper argument and made no mention of the shackles. *See Goff v. State*, 931 S.W.2d 537, 548 (Tex. Crim. App. 1996) (noting that the State may include a plea for law enforcement in its closing argument).

21

The jury heard testimony regarding Ross's 2001 conviction for aggravated assault with a deadly weapon, Ross's involvement in an additional assault in which the two victims identified Ross as the assailant, and Ross's shootout with Duncanville police. In its closing argument, the State asked for enhanced sentences based upon Ross's prior convictions for aggravated assault with a deadly weapon and burglary. For Ross's conviction for unlawful possession of a firearm by a felon, the State requested a sentence from two to twenty years. For Ross's organized crime conviction, the State requested a sentence of twenty-five to ninety-nine years or life. The jury found both enhancements true and returned a maximum sentence on Ross's unlawful possession of a firearm by a felon conviction. On Ross's organized crime conviction, however, the jury returned a fifty-five-year sentence.

Although there is no evidence that any juror actually saw Ross's handcuffs, there is evidence that Ross's handcuffs were visible when he stood up during the first day of the punishment trial. Although the State did not emphasize the handcuffing error and the jury returned less than a maximum sentence on Ross's organized crime conviction, the jury returned the maximum sentence on his unlawful possession of a firearm by a felon conviction. Thus, we cannot say that the trial court's error did not contribute to Ross's punishment, and we hold that the trial court's error was not harmless beyond a reasonable doubt. *See Snowden*, 353 S.W.3d at 822; *Williams*, 958 S.W.2d at 194. Therefore, we

22

sustain Ross's twelfth and thirteenth points and do not reach his fourteenth point on assessment of court costs in the judgment.[6] *See* Tex. R. App. P. 47.1.

## VI.  Conclusion

Having sustained only Ross's twelfth, and thirteenth points,[7] we affirm the trial court's judgment on Ross's convictions, but we reverse the trial court's judgments as to punishment and remand the case for a new trial on punishment.

PER CURIAM

PANEL:  MCCOY, J. ; LIVINGSTON, C.J.; and MEIER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 4, 2013

---

[6]We do find it necessary to note, however, that once a trial court determines a defendant indigent, he is presumed so for the remainder of the proceedings unless his financial circumstances materially change.  Tex. Code Crim. Proc. Ann. art. 26.04(p) (West 2009 & Supp. 2012).  Nothing in the record indicates that Ross's financial circumstances materially changed from the time he was declared indigent until he was sentenced.

[7]Although we sustained Ross's seventh point, we overruled his tenth point, which is dispositive of this issue.

23