

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00246-CR

Destyn David **FREDERICK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 11-09-00041-CRL
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
    Karen Angelini, Justice
    Jason Pulliam, Justice

Delivered and Filed:  September 9, 2015

AFFIRMED

Destyn David Frederick was found guilty by a jury of felony murder and sentenced to thirty

years' imprisonment.  On appeal, Frederick challenges the sufficiency of the evidence to support

his conviction, asserting: (1) the evidence is insufficient to corroborate the testimony of an

accomplice witness; and (2) the evidence is legally insufficient to support the jury's finding that

Frederick was guilty of felony murder.  We affirm the trial court's judgment.

## BACKGROUND

Although a grand jury returned a four count indictment against Frederick, the State elected to proceed to trial on only one count charging Frederick with the capital murder of Israel Casas. The State waived the death penalty.

On the night Mr. Casas was murdered, Frederick admitted he accompanied his friends Rigo Guerra and Marcus Serna to Mr. Casas's home. Guerra and Serna forced their way inside the home, and Guerra shot and killed Mr. Casas. At the conclusion of the evidence, the trial court submitted a jury charge on capital murder and the lesser included offenses of felony murder and burglary of a habitation. The jury charge included instructions on the law of parties and the necessity for accomplice witness testimony to be corroborated. The jury found Frederick guilty of felony murder, and Frederick appeals.

## ACCOMPLICE WITNESS

In his first issue, Frederick contends the evidence is insufficient to corroborate Serna's testimony as an accomplice witness. The record is undisputed that Serna was an accomplice witness as a matter of law, and the jury was so charged.

Article 38.14 of the Texas Code of Criminal Procedure states:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). We evaluate the sufficiency of corroboration evidence under the accomplice-witness rule by first eliminating the accomplice testimony from consideration and then examining the remaining evidence to see if it tends to connect the accused with the offense committed. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Perez v. State*, 437 S.W.3d 610, 616 (Tex. App.—San Antonio 2014, no pet.).

To satisfy the rule, the corroborating evidence is not required to prove the defendant's guilt beyond a reasonable doubt by itself. *Malone*, 253 S.W.3d at 257; *Perez*, 437 S.W.3d at 616. Instead, the corroborating evidence "must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect the accused to the offense." *Malone*, 253 S.W.3d at 257 (internal citations omitted); *see also Perez*, 437 S.W.3d at 616. No set amount of evidence is required to satisfy the accomplice-witness rule, and each case is judged on its own facts. *Malone*, 253 S.W.3d at 257; *Perez*, 437 S.W.3d at 616. "[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257. A defendant's mere presence at the scene of the crime, however, is insufficient to corroborate accomplice testimony. *Id.* "[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), [we] defer to that view of the evidence chosen by the fact-finder." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

In this case, Frederick voluntarily gave two statements to investigators about the burglary and shooting. Both statements were read to the jury. In his first statement, Frederick admitted he gave Guerra the shotgun used in the murder. Although Frederick stated he allowed Guerra to take the shotgun because Guerra intended to purchase it, we defer to the jury's evaluation of the credibility of Frederick's stated reason for supplying the shotgun. We simply note Frederick's provision of the shotgun is evidence linking him to the commission of the crime.

In his second statement, Frederick admitted he went with Guerra and Serna to the Casas' home. The evidence also included the testimony of investigating officers establishing a forced entry into the Casas' garage, and a can of soda was recovered from the hood of a car in the garage. Because DNA testing showed Frederick's DNA could not be excluded as the source of the DNA found on the can of soda, this evidence also linked Frederick to the commission of the offense.

Finally, a pair of latex gloves were found in a backyard in proximity to the shotgun used to murder Mr. Casas. A box of latex gloves was also found in Frederick's truck, and Frederick's DNA could not be excluded as the source of DNA on a latex glove found under the driver's seat of Frederick's truck.

Because the foregoing evidence tends to connect Frederick with the commission of the crime and proves more than just his mere presence at the scene, the evidence is sufficient to corroborate Serna's testimony.

## LEGAL SUFFICIENCY

In his second issue, Frederick contends the evidence is legally insufficient to support the jury's finding that he was guilty of felony murder.

### A. Standard of Review

In assessing the legal sufficiency of the evidence to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Louis v. State*, 393 S.W.3d 246, 249 (Tex. Crim. App. 2012) (internal citations omitted). In applying this standard, we defer to the jury's credibility and weight determinations. *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). In addition, juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. at 16. Although Frederick raises a separate challenge under the accomplice-witness rule, "[w]e do not use the accomplice witness rule in evaluating the sufficiency of the evidence." *Winfrey v.*

*State*, 393 S.W.3d 763, 770 (Tex. Crim. App. 2013). "We simply review all of the evidence in the light most favorable to the verdict." *Id*.

B.      Summary of Evidence

Viewing the evidence in this case in the light most favorable to the verdict, Frederick admitted he was with Guerra and Serna when Israel Casas was murdered. Serna was offered a deal by the State and testified at Frederick's trial. After spending several hours together, Frederick, Guerra, and Serna were sitting in Frederick's truck and discussed going to break into a house and see what they could find. Guerra suggested they should have a gun for protection. In response to this suggestion, Frederick stated his mother had a shotgun she was trying to sell. Frederick then went inside his house and handed the shotgun through an air conditioning vent to Guerra, who was waiting outside. After Guerra returned to Frederick's truck with the shotgun, Frederick exited his house through the front door and returned to the truck.

The three men drove to Serna's house because he had a box of shotgun shells. Upon arriving at his house, Serna retrieved the box and handed it to Guerra, who removed three or four shells. After returning the box to its original location, Serna went inside his house and retrieved three pairs of disposable latex gloves. Upon returning to Frederick's truck, Serna handed Frederick and Guerra a pair of the gloves to avoid leaving fingerprints anywhere. Frederick then drove to a location near a water tower where he left his truck hidden under a carport to avoid it being traced to their intended burglary. The three men put the gloves on before exiting the truck.

The three men then began walking toward a light on a ranch when they encountered a Gator, which was later described as a heavy-duty four-seater golf cart or ATV, with its key in the ignition. After driving the Gator to a building, Guerra and Serna exited the Gator and crept to the front of the building where they saw a woman smoking a cigarette. Although Guerra told Serna he wanted to kill the woman, Serna told him no. Guerra and Serna then returned to the Gator, and

the three men drove to another house where all three men exited and approached the house. Either Guerra or Frederick forced their entry into a garage from a carport. Because they did not find anything of value in the garage, they began discussing whether to leave or go inside the house. Serna believed Guerra grabbed a soda from a refrigerator in the garage, took a drink, and returned it to the refrigerator. Serna did not recall Frederick drinking a soda.

When Guerra decided to enter the house, Serna followed him while Frederick walked out of the garage. After forcing their entry into the house, Guerra shot Mr. and Mrs. Casas. The evidence is undisputed that Mr. Casas died as a result of a gunshot wound to his face.

After the shots were fired, Guerra and Frederick ran out of the house and returned to the Gator. All three men drove back to Frederick's truck and left the Gator where the truck was previously parked. After driving around in the truck for twenty minutes, Guerra suggested they rob a gas station. Guerra exited the truck and told them to pick him up behind some apartments. Instead, Frederick drove to an alley behind Serna's house where they left the truck, walked to the street, and saw multiple police cars at the gas station. As they began to return to the truck, Frederick and Serna saw officers with a spotlight on the truck, so they ran to a different location. Frederick called his mother and was apprehended when she arrived to pick him up. Serna was apprehended shortly thereafter in the same general location.

C.     Analysis

As previously noted, Frederick was found guilty of felony murder. With regard to this offense, the jury was charged:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about June 13, 2011, in La Salle County, Texas, the defendant, Destyn David Frederick, either acting alone or as a party thereto as hereinbefore defined, did then and there commit or attempt to commit felony, to wit: burglary of a habitation and in the course of and in furtherance of the commission, or in immediate flight from the commission of said felony, he either acting alone, or as a party thereto as hereinbefore defined,

committed or attempted to commit an act clearly dangerous to human life, to wit: shooting Israel Casas with a firearm, you will find the defendant guilty of the lesser included offense of felony murder.

*See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). The jury charge included an instruction on the conspiracy theory of parties which permitted the jury to find Frederick criminally responsible for felony murder if: (1) he conspired with Guerra and Serna to commit the offense of burglary of a habitation; (2) Guerra or Serna committed the felony of murder in furtherance of the burglary; and (3) the murder was a felony Frederick should have anticipated as a result of carrying out the conspiracy. *Id*. at § 7.02(b).

Viewing the evidence in the light most favorable to the jury's verdict, Frederick, Guerra, and Serna discussed committing a burglary. Frederick supplied Guerra with the shotgun to be used during the burglary.[1] Frederick and the other men put on gloves in an effort to conceal any fingerprints. Frederick, Guerra, and Serna forced their entry into the Casas' garage. Frederick's DNA could not be excluded as the source of the DNA found on the soda can left on top of the car in the garage. By supplying Guerra with the gun for which Serna provided shells, Frederick could have anticipated Guerra using the gun to shoot someone. *See Flores v. State*, 681 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex. Crim. App. 1985) (noting defendant could have anticipated victim being shot in furtherance of conspiracy to commit burglary because defendant knew co-conspirator had a gun). Therefore, the evidence is legally sufficient to support the jury's finding that Frederick was guilty of felony murder.

---

[1] In discussing the law of parties in his brief, Frederick cites *Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012), and argues, "*Gross*'s conviction and appellant's conviction both involve a legal and factual determination of whether they were culpable for the death of the victims as a party." Frederick notes the court in *Gross* held the evidence insufficient to convict the appellant as a party. 380 S.W.3d at 188-89. In *Gross*, however, the shotgun used in the murder was located in the truck the appellant was driving, but the appellant never handed the gun to the person who shot the victim. 380 S.W.3d at 183. In the instant case, however, Frederick admitted he gave Guerra the shotgun used in the offense. In addition, Serna testified about the discussions he had with Guerra and Frederick regarding the plan to engage in burglaries, while no evidence of any discussions between the appellant and the shooter was presented in *Gross*.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH