**Robert George DUNCAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–82–0065–CR.**

Court of Appeals of Texas,
Tyler.

Sept. 28, 1984.

Grady Inzer, Longview, for appellant.

Carter Beckworth, Dist. Atty., Longview, for appellee.

## SUMMERS, Chief Justice.

Appellant Robert George Duncan was convicted for possession of over four ounces of marihuana; punishment was assessed by the jury at two years confinement. Duncan brings three grounds of error. He asserts the trial court erred by not suppressing seven bags of marihuana (totaling approximately 9.6 ounces) which were seized during a routine inventory search from the locked glove compartment of the car he was driving. He also claims the jury charge was improper because it included an instruction on joint possession which was at variance with the indictment and pleadings. Finally, Duncan contends that the evidence offered by the State was merely circumstantial and therefore insufficient to support the conviction for possession of marihuana. We affirm the conviction.

On July 8, 1981, two officers of the narcotics unit of the Longview Police Department, who were dressed in plain clothes and driving an unmarked car, noticed a weaving automobile traveling south on High Street in Longview, Texas. The officers stopped the car and pulled up behind it. They approached the vehicle and showed their police badges to Duncan, who was driving the automobile, and the passenger. After identifying themselves as policemen, they asked Duncan and the passenger to step out of the car. The officers observed that both men were incoherent and appeared to be drunk. One officer began a conversation with Duncan to discuss his erratic driving. During this conversation the officer looked inside the automobile and smelled the odor of burnt marihuana. Duncan was arrested for driving while intoxicated.

The officers asked Duncan if he would consent to a search of the automobile. Duncan objected and the officers did not conduct one at the scene of the arrest. Since there was no one with whom the officers could entrust the automobile, one of the officers obtained the keys and drove the car to the Longview city jail where it was impounded and placed in police custody. Pursuant to the standard procedures of the Longview Police Department, the officers inventoried the automobile at the station house.[1] The officers did not obtain a warrant before inventorying the car. The officers used the keys to unlock the trunk and the glove compartment to inventory them. Seven bags of marihuana were discovered inside the locked glove compart-

---

1. At Duncan's trial, one of the officers who conducted the inventory testified as follows:

   Q. All right. Did you conduct a routine search of the vehicle?
   A. Yes, I did. Both me and my partner conducted a search of the car—we do this for an inventory purpose as standard procedure on all the vehicles that we bring in. We inventory the contents in case there is something say of considerable value we will know that it's in the car. It protects the officer is what it does.

The other officer later testified as follows:
   Q. Okay. What did you do with the car at the police station?
   A. We did an impound sheet on it.
   Q. Okay. Is this a usual procedure?
   A. Yes, ma'am.
   Q. And what is an impound sheet?
   A. It's where we go through the car and write all the stuff that's in the car down on a piece of paper to insure that when it leaves the next [sic] that it's still there—they have a check list to go by.

ment. The officers also found a roach clip attached to one of the sun visors of the car. The bags of marihuana were placed in a manila envelope and put in an evidence locker at the police station for safekeeping.

Duncan did not make a pretrial motion to suppress the evidence found during the inventory, although he did object to the introduction of the evidence when it was offered at trial on the ground that the warrantless search and seizure was illegal. *See, e.g., Roberts v. State,* 545 S.W.2d 157 (Tex.Cr.App.1977). Duncan argued that the automobile was in police custody and therefore the officers had ample opportunity to obtain a warrant. The trial judge overruled his objection and his ground of error on appeal reads as follows: "The warrantless stopping and arrest was without probable cause, and the subsequent warrantless search and seizure was illegal, and the poisoneous [sic] fruits should have been excluded."

We must initially determine which law controls the disposition of the search and seizure aspect of this case. While the search and seizure provisions of the Texas and Federal Constitutions are substantially similar,[2] the Federal Constitution merely sets minimum standards and nothing prohibits the Texas Constitution from providing greater protections. We must therefore determine whether the protections furnished by the Texas Constitution are any greater than those provided by the Federal Constitution.[3]

The United States Supreme Court in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, *opinion on remand,* 247 N.W.2d 673 (1976), explicitly approved the taking of an inventory of a legally impounded vehicle. That case involved a locked automobile which was impounded and towed to the city impound lot because it was illegally parked. A Vermillion, South Dakota, police officer unlocked the car door and, using an inventory form pursuant to standard police procedures, inventoried the contents of the car including the contents of the unlocked glove compartment in which the officer found a plastic bag containing marihuana. In construing the fourth amendment of the Federal Constitution, the Supreme Court held that inventories of lawfully impounded automobiles, including an unlocked glove compartment, are not unreasonable intrusions of one's expectation of privacy. The Court reasoned that inventories fulfill three specific needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097. The Court recognized that standard inventories have been viewed as essential to protect against theft or vandalism and often include a search of the glove compartment since valuables and documents are usually placed there. Such a search is justifiable and not unreasonable because vandals would have ready access

**2.** Article 1, section 9 of the Texas Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

The fourth amendment of the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

> place to be searched, and the persons or things to be seized.

The fourth amendment is applicable to the states through the fourteenth amendment of the United States Constitution. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**3.** It should be noted at the outset of this discussion that Duncan has failed to state on which constitution he is relying. Nevertheless, the actions of the police are regulated by both constitutions and a violation of either by the police would result in a reversal of Duncan's conviction. Neither the State nor Duncan has argued that the protections provided by the Texas Constitution are any different than the protections given by the fourth amendment of the Federal Constitution.

to valuables stored in the glove compartment once they broke into the car. *Id.* at 375 n. 10, 96 S.Ct. at 3100 n. 10.[4]

Unfortunately, the Supreme Court in *Opperman* did not express an opinion on whether the police could open and search the glove compartment if it is locked. *See United States v. Opperman,* 428 U.S. 364, 385 n. 1, 96 S.Ct. 3092, 3105 n. 1, 49 L.Ed.2d 1000 (1976) (Marshall, J., dissenting). However, the harbinger of the Opperman case, *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), did involve a search of a locked trunk. The automobile in *Cady* was impounded and towed to a private garage. The automobile was owned by a Chicago policeman and officers conducting the search had reasonable grounds to believe that a service revolver was in the car's trunk. However, there was no probable cause to believe that the trunk contained fruits of a crime and the sole justification for the warrantless search was that it was incident to the caretaking function of the local police to protect the community's safety. Many federal courts of appeal have allowed inventories of locked trunks since *Opperman* was decided. *See, e.g., United States v. Orozco,* 715 F.2d 158, 161 (5th Cir.1983); *United States v. Hall,* 565 F.2d 917, 921 (5th Cir.1978).

■ The first Texas case to follow *Opperman* was *Robertson v. State,* 541 S.W.2d 608 (Tex.Cr.App.1976), *cert. denied,* 429 U.S. 1109, 97 S.Ct. 1145, 5 L.Ed.2d 563 (1977). In that case Robertson drove his car into a utility pole and he was rendered unconscious. Robertson was taken by ambulance to a local hospital and his car was towed by a private wrecking company to a garage. Before the car was towed, the police inventoried the car and found marihuana in the unlocked glove compartment. The Court of Criminal Appeals concluded that the case was governed by *South Dakota v. Opperman* and that "in following standard police procedures, the conduct of the police was not unreasonable under the Fourth Amendment." *Robertson,* 541 S.W.2d at 611. The majority opinion in *Robertson* did not mention the Texas Constitution and made no references to any protections provided by the state constitution which are not provided by the federal constitution. In all the cases involving the inventory of an impounded automobile decided by the Texas Court of Criminal Appeals since *Robertson,* we are unable to find one which treats the Texas Constitution any differently than the United States Constitution. *See, e.g., Backer v. State,* 656 S.W.2d 463 (Tex.Cr.App.1983). We therefore conclude that art. I, sec. 9 of the Texas Constitution is co-extensive with the fourth amendment of the United States Constitution.

■ The question then is whether an inventory of a locked glove compartment of a lawfully impounded automobile is a reasonable search under the fourth amendment.[5] In *Guillett v. State,* 651 S.W.2d 902, 903 (Tex.App.—Houston [1st Dist.] 1983, pet. granted), the court ruled that the inventory search of the locked glove compartment of an impounded automobile constituted an

---

4. After the United States Supreme Court determined that the fourth amendment had not been violated, on remand the South Dakota Supreme Court concluded that "as a matter of protection under S.D. Const., art. VI, § 11, 'minimal interference' with a citizen's constitutional rights means that noninvestigative police inventory searches of automobiles without a warrant must be restricted to safeguarding those articles which are *within plain view of the officer's vision." State v. Opperman,* 247 N.W.2d 673, 675 (S.D.1976) (emphasis added).

5. Because we hold that the inventory search of Duncan's locked glove compartment did not violate his constitutional rights, we do not decide whether the search might be justified on alternative grounds, e.g., a search incident to an arrest, *New York v. Belton,* 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981); or a search based upon probable cause, *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). However, the officers did smell the odor of burnt marihuana in the car and that is enough to justify "a man of reasonable caution and prudence to believe he will find the instrumentality of a crime or evidence pertaining to a crime" in the locked glove compartment. *Moulden v. State,* 576 S.W.2d 817, 819 (Tex.Cr.App. 1978) (quoting *Brown v. State,* 481 S.W.2d 106, 110 (Tex.Cr.App.1972)).

unlawful intrusion of one's right to be secure against unreasonable searches under the Texas and United States Constitutions. After determining that the automobile was lawfully impounded when the driver was arrested for driving while intoxicated, the court reasoned that "since the glove compartment was locked ... it is unlikely that police would be charged with losing or misappropriating property found therein, and the possibility of vandalism ... is sufficiently minimized so that the purposes of the inventory search are not sufficient to outweigh the appellant's reasonable expectation of privacy in the locked compartment." *Guillett*, 651 S.W.2d at 904. We do not agree with the reasoning of the Houston Court of Appeals.

Chief Justice Burger, while writing for the Court in *Opperman*, stated that "[i]n applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." *Opperman*, 428 U.S. at 373, 96 S.Ct. at 3099. The Court rejected the argument that the car was secure since the doors were locked and the windows were rolled up. It also rejected the lesser intrusive means of turning back vandals by placing guards at the storage lot since "that alternative may be prohibitively expensive, especially for smaller jurisdictions.... There is thus a substantial gain in security if automobiles are inventoried and valuable items removed for storage." *Id.* at 379, 96 S.Ct. at 3102.

If the primary rationale for inventory searches is to promote security for the automobile and the contents located therein and it is not unreasonable for the police to unlock the car door and inventory the contents inside, including those in an unlocked glove compartment, it is also not unreasonable for the police to unlock a locked glove compartment in order to inventory the contents therein. It is unlikely that a vandal will be deterred from breaking a glove compartment lock once he has gained entry into the car by breaking the door lock or window. Justification for the inventory of a locked glove compartment also does not depend upon "loose" articles being within the plain view of a police officer. Valuables and important papers are often stored in locked glove compartments and that is certainly within the common knowledge of any would-be vandal. A vandal would not necessarily need the impetus of articles in plain view to be motivated to break into the car in order to survey the contents of a glove compartment. In weighing the danger of theft and vandalism of an impounded automobile against Duncan's reasonable expectation of privacy in the locked glove compartment, it cannot be said that the Longview police officers acted unreasonably when they conducted an inventory search of Duncan's locked glove compartment.

The Houston Court of Appeals reasoned that its holding in *Guillett* was compelled by the case of *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1980). However, the Gill case did not involve a true inventory. The question presented in the majority opinion was whether the officers had probable cause to break into the locked trunk of an automobile after finding a small quantity of suspected contraband in the passenger compartment. The court held that "the existence of probable cause to search the interior of an automobile is not necessarily sufficient to justify the search of the trunk." [6] When the State tried to justify the search of the locked trunk in *Gill* as a routine inventory search, the Court of Criminal Appeals wrote, "... there was no proof that an inventory of the car was in fact conducted. The burden is on the State to prove a proper inventory." *Id.* at 312. The search of the trunk in *Gill* occurred after the officers were unsuccessful in obtaining the keys to the trunk from the arrested driver. They forced their way into the trunk by having the tow truck driver remove the back seat so that the officers could look into the trunk from the inside of the auto-

**6.** *Contra United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed. 572 (1982).

mobile. It is clear from the Gill opinion that standard police procedures were not observed when the car was inventoried and that the inventory was in reality nothing more than a sham. At least one Texas Court of Appeals has refused to follow *Gill* where there is no evidence of forced entry into a locked trunk. *See Martinez v. State*, 644 S.W.2d 104, 110 (Tex.App.—San Antonio 1982, no pet.).

We therefore hold that the inventory of the lawfully impounded automobile in the case at bar was conducted pursuant to standard police procedures and was not unreasonable under the fourth amendment of the United States Constitution. Therefore, the marihuana found during inventory was properly introduced at trial.

Duncan's next ground of error charges that the court erred in submitting a charge on joint possession which was at variance with the indictment and pleadings of the State. The court's instruction reads as follows: "You are further instructed that possession of the alleged marihuana need not be exclusive, and evidence which shows that the Defendant jointly possessed it with another is sufficient. The mere presence of the Defendant at a place where the alleged marihuana is possessed does not, in itself, justify a finding of joint possession."

■■■ In order to establish the unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control and management over the contraband, and (2) that the accused knew that the matter possessed was contraband. It is not necessary to prove that the accused had exclusive possession of the narcotics in question. *Deshong v. State*, 625 S.W.2d 327 (Tex.Cr. App.1981). In essence, Duncan argues that since the indictment stated that "Robert George Duncan did then and there knowingly and intentionally possess a usable quantity of marihuana of more than four ounces," it was error to submit the joint-possession instruction because it did not conform to the indictment. We cannot agree. The indictment properly charged Duncan with the offense of possession of

marihuana. The jury instruction regarding joint possession did not affect the State's burden to prove that Duncan was beyond a reasonable doubt in actual care, custody, control or management of the marihuana as required by Art. 4476–15, sec. 1.02(23) of the Texas Controlled Substances Act. Duncan's second ground of error is overruled.

■■■ Finally, Duncan contends that the evidence submitted against him was merely circumstantial and therefore insufficient to support his conviction. While it is true that the mere presence of the accused at the place where the controlled substance is located is not in itself sufficient to link the accused to the contraband, additional facts, such as exclusive possession of the place where the substance is found, can be used to indicate the accused's knowledge and control of the contraband. *Shortnacy v. State*, 474 S.W.2d 713 (Tex.Cr.App.1972). Where the accused is the driver of the automobile in which the contraband was found, sufficient circumstances exist for the jury to conclude that the accused has dominion, control and possession over the place where the contraband is located and therefore has exercised care, control and management over the contraband itself. *Aldridge v. State*, 482 S.W.2d 171 (Tex.Cr. App.1972).

Although the State did not attempt to prove that Duncan owned the car in which the marihuana was found, the evidence is uncontradicted that Duncan was driving the automobile and therefore had exclusive possession of it. Furthermore, the officers smelled the odor of burnt marihuana inside the automobile which supports the jury's finding that Duncan had knowledge that the marihuana was located therein. We therefore overrule Duncan's last ground of error.

For the reasons stated, we affirm the judgment of the trial court.