02-11-439 & 440-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00439-CR

 

 


 
 
 Earnest
 Ross
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 158th District
 Court
  
 of
 Denton County (F-2008-1958-B)
  
 January
 4, 2013
  
 Per
 Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
error in part of the trial court’s judgment.  We affirm the trial court’s
judgment of conviction, but reverse the trial court’s judgment as to punishment
and remand this case for a new trial on punishment only. 

 

SECOND DISTRICT COURT OF APPEALS 

 

 

PER
CURIAM

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00439-CR

NO. 02-11-00440-CR

 

 


 
 
 Earnest Ross
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 158th
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

                                                                                                        
I.       
Introduction

Appellant
Earnest Ross appeals his convictions for engaging in organized criminal
activity and unlawful possession of a firearm by a felon.  We affirm in part
and reverse and remand in part.

                                                                       
II.       
Factual and Procedural Background

In
the State’s earlier appeal in this case of the trial court’s order partially
granting Ross’s motion to suppress evidence, we set out the factual background
that ultimately led the jury to convict Ross of unlawful possession of a
firearm by a felon and engaging in organized criminal activity.  See State
v. Ross, Nos. 02-09-00109-CR, 02-09-00110-CR, 2010 WL 87427, at *1–2, 5
(Tex. App.—Fort Worth Jan. 7, 2010, pet. ref’d) (mem. op., not designated for
publication) (concluding that the trial court erred by suppressing evidence
located in a locked suitcase found in the trunk of the vehicle Ross was
driving).

During
trial, the State offered Ross’s 1981 burglary conviction as a predicate for the
unlawful possession of a firearm by a felon charge and as an enhancement on the
organized crime charge, and it offered a parole report and oral testimony to
show that Ross had been discharged less than five years before his arrest in
this case.  During the charge conference, the State proposed a charge
containing a “joint possession” definition because multiple people had access
to the firearms in question; Ross objected to the inclusion of this definition as
non-statutory.

The
jury convicted Ross, and during the first day of Ross’s punishment trial, the
trial court ordered that Ross be handcuffed and shackled. The trial court
observed that Ross’s handcuffs became visible when he stood.  The jury assessed
Ross’s punishment at twenty years’ confinement for the unlawful possession of a
firearm by a felon conviction and fifty-five years’ confinement for the
engaging in organized crime conviction.  These appeals followed.

                                                                                                      
III.       
Sufficiency

In
his fifth point, Ross complains that the evidence is insufficient to support
his conviction for unlawful possession of a firearm by a felon under penal code
section 46.04.  In our due process review of the sufficiency of the evidence to
support a conviction, we view all of the evidence in the light most favorable
to the verdict to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v.
State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).  Although Ross bases his
complaint on what he argues in his first, second, third, and fourth points was
the inadmissibility of his 1981 conviction and the parole report, we must
consider all of the evidence admitted at trial, even improperly admitted
evidence, when performing a sufficiency review.  See Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007); Moff v. State, 131 S.W.3d
485, 489–90 (Tex. Crim. App. 2004).  We must do so even in a case that we
reverse and remand because of error in the admission of evidence.  Moff,
131 S.W.3d at 490.

As
set out in the penal code and authorized by the indictment, it is unlawful for
a person previously convicted of a felony to possess a firearm after conviction
and before the later of the fifth anniversary of the person’s release from
confinement following the conviction or the person’s release from supervision
under community supervision, parole, or mandatory supervision.  Tex. Penal Code
Ann. § 46.04 (West 2011).  The penal code defines “possession” as “actual care,
custody, control, or management,” id. § 1.07(39) (West 2011 & Supp.
2012), and declares that “[p]ossession is a voluntary act if the possessor
knowingly obtains or receives the thing possessed or is aware of his control of
the thing for a sufficient time to permit him to terminate his control,” id.
§ 6.01 (West 2011).  To support Ross’s conviction, the State had to prove that
Ross intentionally or knowingly possessed a firearm.  The penal code defines an
“intentional” act as acting with the “conscious objective or desire to engage
in the conduct or cause the result.”  Id. § 6.03(a) (West 2011). 
Finally, the penal code declares that a person acts “knowingly . . . with
respect to the nature of his conduct or to circumstances surrounding his
conduct when he is aware of the nature of his conduct or that the circumstances
exist” and that a person acts “knowingly . . . with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.”  Id. § 6.03(b).

Here,
the record reflects that the State presented evidence that Ross was convicted
of felony burglary in 1981.  Jimmy Watkins, Ross’s probation officer, testified
that Ross was released from community supervision on January 27, 2006, within
five years of June 16, 2008, when police arrested him and found four firearms
in his car.  Among the four firearms found in Ross’s car was a Heckler &
Koch pistol that, according to Courtney Farmer, Devin Stephen, and Nicholas
Porter’s testimony, Ross had modified and carried on numerous occasions.  Viewing
all of the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could have found the essential elements of unlawful
possession of a firearm by a felon beyond a reasonable doubt.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi v. State, 330 S.W.3d 633, 638
(Tex. Crim. App. 2010).  We overrule Ross’s fifth point.

Furthermore,
the trial court did not abuse its discretion by admitting the 1981 conviction. 
See Shuffield v. State, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006)
(setting out standard of review for admission of evidence).  Although in his
first two points, Ross complains that the 1981 conviction was void for lack of
jurisdiction and that his substantial rights were violated when the trial court
admitted it during the guilt phase of his trial, the State introduced a pen
packet that contained a copy of the 1981 judgment and Ross’s fingerprints and
photo, and connected the pen packet to Ross by expert testimony.  After Ross
complained that the pen packet listed his birthday incorrectly, the State
obtained and offered the original file from the 1981 conviction.  Although the
file did not contain the juvenile court’s certification order, it contained the
State’s motion for an examining trial recounting the events leading up to Ross’s
transfer from juvenile court to the district court and the motion for the
examining trial transcript, in which Ross’s counsel at the time stated, “This
Defendant was certified as an adult to stand trial in the above entitled and
numbered cause.”  In response to the State’s evidence, Ross offered nothing to
show that he had not been certified as an adult before his 1981 trial.

Although
there is no “presumption of regularity” when a defendant attacks a juvenile
transfer on direct appeal, which requires the State to prove that the jurisdictional
transfer requirements were met, See White v. State, 576 S.W.2d 843, 845
(Tex. Crim. App. 1979), when a defendant collaterally attacks a prior
conviction, the State has only the initial burden to produce prima facie proof
of a valid prior conviction.  Johnson v. State, 725 S.W.2d 245, 247
(Tex. Crim. App. 1987); see also Tex. Fam. Code Ann. §§ 51.02, 51.04,
54.02 (West 2008 & Supp. 2012) (setting out the procedure for a juvenile
court to transfer jurisdiction to a district court).  “Once the State properly
introduces a judgment and sentence and identifies appellant with them, we
presume regularity in the judgments,” and the defendant then has the burden to
“make an affirmative showing of any defect in the judgment.”  Johnson,
725 S.W.2d at 247.  To prevail, the defendant must prove that the prior
conviction is void or “tainted by a constitutional defect.”  Galloway v.
State, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979).

Because
the State’s evidence provided prima facie proof of Ross’s 1981 conviction, see
Johnson, 725 S.W.2d at 247 (noting that a pen packet containing a judgment,
sentence, and fingerprints was sufficient to establish that the defendant’s
prior conviction as a juvenile was “regular on its face”), and because Ross
then did not affirmatively show any defect in the judgment, the trial court did
not abuse its discretion by admitting the 1981 conviction.  See id. 
Further, although Ross argues that he received no limiting instruction on the
1981 conviction, the record does not reflect that he requested one, although it
does reflect that one was included in the jury charge.  We overrule Ross’s
first two points.

Likewise,
Ross was not harmed by the admission of the parole report although he complains
in his third and fourth points that the report lacked sufficient indicia of
reliability or trustworthiness and violated his right to confrontation under
the Sixth Amendment.  Assuming without deciding that the trial court abused its
discretion by admitting the parole report, the State also offered testimony
from Jimmy Watkins, Ross’s parole officer, to prove that Ross was released from
community supervision on January 27, 2006, within five years of his arrest in
this case on June 16, 2008.  Although Ross argues that Watkins’s testimony is
insufficient to support the trial court’s ruling admitting the report because
Watkins could not explain the computations that kept Ross under the State’s
supervision until 2006, penal code section 46.04(a) requires only that the
firearm possession occur within five years of the defendant’s release from
supervision; it contains no requirement that the State explain the manner in
which the supervision period was calculated.  See Tex. Penal Code Ann. § 46.04(a). 
Because an erroneous admission of evidence will not require reversal when other
such evidence was received without objection, either before or after the
complained-of ruling, Estrada v. State, 313 S.W.3d 274, 302 n.29 (Tex.
Crim. App. 2010) (citing Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim.
App. 1998)), cert. denied, 131 S. Ct. 905 (2011); Lane v. State,
151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (outlining constitutional harm
analysis factors that assess the importance of erroneously admitted
out-of-court statements in light of other admissible evidence and the strength
of the State’s case), we overrule Ross’s third and fourth points without
reaching his constitutional and hearsay complaints.[2] 
See Tex. R. App. P. 47.1.

                                                                                                     
IV.       
Jury Charge

In
his seventh, eighth, tenth, and eleventh points, Ross complains that the trial
court erred by instructing the jury that his firearm possession need not be
exclusive because this instruction had no basis in the penal code and because
it constituted an impermissible comment on the weight of the evidence.

When
Ross was arrested, police found four firearms in his car:  a Heckler & Koch
.40-caliber pistol, a Smith & Wesson .40-caliber pistol, a Walther
.22-caliber pistol, and a SKS assault rifle.  Police later found two shotguns
in Stephen’s home, where Ross had temporarily stayed.  At the charge
conference, the State proposed a jury charge containing a “joint possession”
definition because the evidence showed that others had access to the firearms,
including Stephen, who was arrested with Ross and who acknowledged in federal
court that he had possessed some of the firearms, and Ross’s wife, who owned
the car Ross was driving at the time he was arrested.  Ross objected that the
State’s proposed jury instruction had no basis in the penal code.

Based
on its reading of Duncan v. State, 680 S.W.2d 555 (Tex. App.—Tyler 1984,
no pet.) (holding that a “joint possession” instruction was proper despite that
fact that it deviated from the indictment), the trial court overruled Ross’s
objection and included a “joint possession” definition in the jury charge.[3] 
The jury charge stated:

“Possession” means actual care, custody, control, or
management.

You are further instructed that possession of the alleged
firearms need not be exclusive, and evidence which shows that the defendant
jointly possessed it with another is sufficient.  The mere presence of the
defendant at a place where the alleged firearms are possessed does not, in
itself, justify a finding of joint possession.

A.   Standard
of Review

“[A]ll
alleged jury-charge error must be considered on appellate review regardless of
preservation in the trial court.”  Kirsch v. State, 357 S.W.3d 645, 649
(Tex. Crim. App. 2012).  In our review of a jury charge, we first determine
whether error occurred; if error did not occur, our analysis ends.  Id. 
If error did occur, whether it was preserved determines the degree of harm
required for reversal.  Id.

Error
in the charge, if timely objected to in the trial court, requires reversal if
the error was “calculated to injure the rights of [the] defendant,” which means
no more than that there must be some harm to the accused from the
error.  Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); Abdnor v. State,
871 S.W.2d 726, 732 (Tex. Crim. App. 1994); Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1985) (op. on reh’g); see also Louis v. State,
No. PD-0323-11, 2012 WL 2007632, at *8 (Tex. Crim. App. June 6, 2012) (noting
that the jury charge harm analysis standards under Almanza are
well-established).  In other words, a properly preserved error will require
reversal as long as the error is not harmless.  Almanza, 686 S.W.2d at
171.

In
making the harm determination, “the actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole.” 
Id.; see generally Hutch v. State, 922 S.W.2d 166, 172–74 (Tex.
Crim. App. 1996).  The purpose of this review is to illuminate the actual, not
just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.

B.  
Analysis

In a
felony case tried to a jury, the judge shall deliver to the jury “a written
charge distinctly setting forth the law applicable to the case.”  Tex. Code
Crim. Proc. Ann. art. 36.14 (West 2007).  Generally, if a jury-charge
instruction is not derived from the penal code, it is not “applicable law”
under article 36.14.  Kirsch, 357 S.W.3d at 651 (quoting Walters v.
State, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)).

On
appeal, Ross claims that the non-statutory “joint possession” instruction is
akin to the non-statutory “affirmative links” instruction rejected in Deener
v. State, 214 S.W.3d 522, 529–30 (Tex. App.—Dallas 2006, pet. ref’d).  The
court in Deener held that the “affirmative links” doctrine is not a
legal rule but rather a shorthand expression of what must be proven for knowing
or intentional possession.  Id. (citing Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995)).

            
I.       
Penal Code

The
penal code defines possession as “actual care, custody, control, or management.” 
Tex. Penal Code Ann. § 1.07(39) (West Supp. 2012).  The penal code, however,
does not define “joint possession.”  Rather, “joint possession,” like
“affirmative links,” is a rule for assessing evidentiary sufficiency.  See Gordon
v. State, No. 02-11-00413-CR, 2012 WL 4121147, *2 n.14 (Tex. App.—Fort
Worth Sept. 20, 2012, no. pet. h.) (mem. op., not designated for publication)
(citing Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986), for the
proposition that proof of joint possession is sufficient to prove possession). 
“Texas courts are forbidden from instructing the jury on any presumption or
evidentiary sufficiency rule that does not have a statutory basis.”  Brown
v. State, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003), cert. denied,
124 S. Ct. 1678 (2004).  Thus, the trial court erred by including the “joint
possession” definition in the jury charge.  See id.

          
II.       
Harm Analysis

Because
Ross preserved this error, we must reverse the trial court’s judgment on the
unlawful possession of a firearm by a felon conviction if we find some harm.  See
Almanza, 686 S.W.2d at 171.

The
record indicates that “joint possession” was a major theme in the State’s case
against Ross.  Indeed, the State first mentions the concept during voir dire,
when it asked, “What about the concept of joint possession, two or more people
can actually possess the same thing?”  During direct examination of Denton
County Deputy Sheriff Davis, the State asked, “[C]an two or more people possess
the same item?”  When Davis responded “[a]bsolutely,” the State asked, “Is that
also known as joint possession?”  Again, on direct examination of federal agent
Patterson, the State asked, “Are you familiar with the term joint possession?” 
Finally, the State said in its closing argument, “Because Devin Stephen pled
guilty to the two shotguns in no way, shape, manner or form prevents Earnest
Lynn Ross from possessing those same shotguns.  That is why you have a charge
in there about joint possession.”  The record indicates, however, that the
State primarily discussed “joint possession” when addressing the two shotguns
found in Stephen’s home.[4]

Further,
the record indicates that Ross was seen on numerous occasions with the Heckler
& Koch .40-caliber pistol that police found in his car.  When asked about
the computer bag found in Ross’s car, Farmer testified that he knew the bag
because Ross often carried either the Heckler & Koch or the Walther pistol
in it.  Farmer also testified that Ross carried the pistol during a home
invasion that the two conducted on May 15, 2008.  Stephen testified that he
found the pistol in his house after Ross started staying there and that he admonished
Ross to remove the gun, at which point Ross put the pistol in his car.  Finally,
Porter testified that Ross brought the pistol to him twice in order to have a
flashlight mounted to it.[5]

The
State indicted Ross on two separate counts of unlawful possession of a firearm
by a felon.  The first count was for three of the firearms found in his car on
June 16, 2008, which included the Heckler & Koch pistol.  The second count was
for the two shotguns found in Steven’s home.  The jury charge on both counts
contained a “joint possession” definition.  Despite this language, the jury
found Ross not guilty of possession of the shotguns in the second count. 
Further, the jury charge on the first count permitted the jury to find Ross
guilty of possessing any one of the three firearms in question.

Given
that the jury found Ross not guilty of possessing the shotguns despite the
State’s emphasis on Ross and Stephen’s joint possession and considering the
evidence showing that Ross modified and regularly carried the Heckler &
Koch pistol, we hold that the trial court’s error of including a “joint
possession” instruction was harmless, see id., and we overrule Ross’s
tenth point.

         
III.       
Impermissible Comment on the Weight of the Evidence

Ross
claims for the first time on appeal that the “joint possession” instruction was
also an improper comment on the weight of the evidence.  However, because we
hold that the trial court’s error of including the “joint possession”
definition was harmless, we need not also address whether this unpreserved
error resulted in egregious harm.  See Hutch, 922 S.W.2d at 171; see
also Tex. R. App. P. 47.1.  Therefore, we overrule Ross’s eighth and eleventh
points.

                                                                                                           
V.       
Shackles

In
his twelfth and thirteenth points, Ross complains that the trial court abused
its discretion by requiring him to appear in shackles on the first day of his
punishment trial.

Once
convicted, Ross appeared in court for the punishment trial wearing handcuffs, a
belly strap, and leg shackles.  Before the jury entered, Ross’s attorney
objected to the restraints and pointed out that Ross’s position at counsel table
placed the restraints in full view of the jurors as they entered the
courtroom.  In response to Ross’s objection, the trial court declared only that
Ross would remain shackled in the interest of security.  After a series of
negotiations, the trial court agreed to place exhibits in front of the counsel
tables to obscure the jury’s view of Ross’s leg shackles.  Despite the
obstructions, Ross’s handcuffs were visible when he stood.  The trial court
suggested that Ross not stand when the jury entered the courtroom, but Ross’s
attorney rejected the court’s suggestion out of respect for the jury.  The
trial court overruled Ross’s objections and conducted the first day of the
punishment trial.

Upon
the State’s request, when the punishment trial resumed on the second day, the
trial court clarified its reasoning for requiring Ross to appear in shackles.  The
trial court said:

I’ve taken into consideration the defendant’s prior
conviction for a burglary of a habitation that involved a rape.  I have taken
into consideration the aggravated assault which involved a death of the victim,
the numerous allegations of home invasions involving violence, the extraneous
offenses and allegations regarding shootings at police officers.  Taking that
into consideration and taking into consideration that I have to provide for the
safety of the court personnel in here, along with assistance, obviously, from
the sheriff’s department, I believe it’s in everyone’s interest, especially
given that the defendant was convicted and that he’s potentially looking at a
sentence that will not allow him to ever return back onto the streets, that we
exercise caution.  I have tried to minimize the impact of such by covering the
bottom portion of the counsel tables, both defense and state.  The handcuffs
are not wholly obvious, although when he does stand, they do become apparent.

Taking all of that into consideration and this jury has
convicted him, the fact that he’s still dressed out in appropriate street
clothes and has the appearance of a professional, I determined that he should
be kept in the additional layer of safety for the court and all the individuals
within the court.

At
that point, Ross called the transport officer, who testified that, despite
being classified as an escape risk, Ross had behaved well while being
transported to and from jail.  After Ross reissued his objection to the
shackles, the trial court agreed to remove Ross’s handcuffs and belly strap.

A.  
Standard of Review

We
review a trial court’s decision to shackle a defendant in two stages.  Long
v. State, 823 S.W.2d 259, 282–83 (Tex. Crim. App. 1991) (citing Clark v.
State, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986)), cert. denied,
112 S. Ct. 3042 (1992).  First, we determine whether the trial court abused its
discretion by ordering the defendant shackled.  Id. at 282.  Next, if we
find that the trial court abused its discretion, we determine whether the
defendant suffered reversible harm.  Id. at 283.

B.  
Abuse of Discretion

Shackling
a defendant is “inherently prejudicial.”  Holbrook v. Flynn, 475 U.S.
560, 568, 106 S. Ct. 1340, 1345 (1986).  Although the presumption of innocence
generally does not apply at the punishment phase, the trial court must still
maintain the defendant’s due process right to a meaningful defense and conduct
dignified proceedings.  Deck v. Missouri, 544 U.S. 622, 632, 125 S. Ct.
2007, 2014 (2005).  Thus, courts may not routinely require defendants to appear
in shackles before a jury during either the guilt or punishment phase of trial,
but exceptional circumstances may demand that a trial court shackle a
defendant.  See id. at 628–29, 125 S. Ct. at 2011–12; Long,
823 S.W.2d at 283.  “Examples of exceptional circumstances warranting shackling
include situations in which the accused has a history of escape, expressed an intent
to escape, threatened physical violence, assaulted persons in the courtroom,
and repeatedly interrupted court proceedings.”  Keith v. State, 294
S.W.3d 352, 355 (Tex. App.—Eastland 2009, no pet.).  When a trial court
determines that it must shackle a defendant, it must make case-specific
findings of fact justifying the use of shackles.  Deck, 544 U.S. at 633,
125 S. Ct. at 2014–15.  Further, the “record must clearly and affirmatively
reflect the trial judge’s reasons [for shackling the defendant].”  Long,
823 S.W.2d at 282.

In Deck,
the defendant was shackled in view of the jury during voir dire and trial on
his punishment.  544 U.S. at 625, 125 S. Ct. at 2010.  The trial court
justified shackling Deck because he had been convicted.  Id., 125 S. Ct.
at 2010.  The Supreme Court held that the trial court’s explanation was
insufficient.  Id. at 634, 125 S. Ct. at 2015.  Further, the Court noted
that after keeping Deck’s shackles out of the jury’s view during the guilt
phase, the trial court inexplicably chose to discontinue this practice once
Deck was convicted.  Id., 125 S. Ct. at 2015.  Consequently, the
Court held that the shackles violated Deck’s due process rights and that the
State had to prove beyond a reasonable doubt that the error did not contribute
to the verdict.  Id., 125 S. Ct. at 2015.

In Marquez
v. State, the defendant was shackled during the punishment phase of the
trial.  725 S.W.2d 217, 228 (Tex. Crim. App. 1987), cert. denied, 484
U.S. 872 (1987), overruled on other grounds by Moody v. State, 717
S.W.2d 910, 918–19 (Tex. Crim. App. 1992).  In its findings of fact, the trial
court noted that after conviction the defendant had threatened escape and
suicide, attacked a cameraman, and threatened a prosecutor.  Id. at
228.  The court of criminal appeals held that the trial court did not abuse its
discretion by shackling the defendant because it sufficiently detailed the
special circumstances warranting the shackles.  Id. at 230.

Like
the visible shackles in Deck, the trial court in this case noted that
Ross’s handcuffs were visible when he stood.  See 544 U.S. at 634, 125
S. Ct. at 2015.  Although the record is silent on whether Ross actually stood
up each time the jury entered, we assume he did so based on his objection to
the trial court’s suggestion that he remain seated in order to obscure the
jury’s view of his handcuffs.  The trial court’s justification included Ross’s
current and prior convictions, similar to the trial court’s justification in Deck. 
See id., 125 S. Ct. at 2015.  In contrast to the defendant’s outbursts
and threats noted in the Marquez findings, the trial court noted no
behavioral issue with Ross.  Cf. Marquez, 725 S.W.2d at 228.  In fact,
the transport officer even testified to Ross’s exemplary behavior.  The only
potential issue noted in the record was Ross’s classification as an escape
risk.  Indeed, once the transport officer testified to Ross’s good behavior,
the trial court partially rescinded its prior order and ordered Ross’s
handcuffs and belly strap removed while leaving Ross’s leg shackles in place.

Given
that Ross’s handcuffs were visible to the jurors when he stood as they entered
the courtroom and given that the trial court identified no special circumstance
warranting the shackles, we hold that the trial court abused its discretion by
ordering Ross shackled during the punishment phase of the trial.  See Deck,
544 U.S. at 634, 125 S. Ct. at 2015.

C.  
Harm Analysis

Unnecessarily
shackling a defendant appearing before a jury violates the defendant’s
constitutional due process rights.  Id. at 627, 125 S. Ct. at 2011.

Because
this error is constitutional, we apply rule 44.2(a).  Tex. R. App. P. 44.2(a). 
The question is whether the trial court’s order requiring Ross to appear in
shackles before the jury at his punishment trial was harmless beyond a
reasonable doubt.  See Williams v. State, 958 S.W.2d 186, 194 (Tex.
Crim. App. 1997).  In applying the “harmless error” test, our primary question
is whether there is a “reasonable possibility” that the error might have contributed
to the punishment.  Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999).

Our
harmless error analysis should not focus on the propriety of the outcome of the
trial; instead, we should calculate as much as possible the probable impact on
the jury in light of the existence of other evidence.  Wesbrook v. State,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001).  We “should take into account any and every circumstance apparent in
the record that logically informs an appellate determination whether ‘beyond a
reasonable doubt [that particular] error did not contribute to the conviction
or punishment,’” and if applicable, we may consider the nature of the error,
the extent that it was emphasized by the State, its probable collateral
implications, and the weight a juror would probably place on the error.  Snowden
v. State, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App.
P. 44.2(a)).  This requires us to evaluate the entire record in a neutral,
impartial, and even-handed manner, not “in the light most favorable to the
prosecution.”  Harris v. State, 790 S.W.2d 568, 586 (Tex. Crim. App.
1989), disagreed with in part on other grounds by Snowden, 353 S.W.3d at
821–22.

The
State argues that the error was harmless because nothing in the record reflects
that any jury member actually saw Ross’s shackles.  However, the trial court
and Ross’s attorney stated that Ross’s handcuffs were visible when he stood.  Thus,
we cannot say from the record that the jurors did not see the handcuffs.

Ross
argues that the State impliedly emphasized the trial court’s error by asking
the jury to impose a harsh sentence on Ross.  This, however, was a proper
argument and made no mention of the shackles.  See Goff v. State, 931
S.W.2d 537, 548 (Tex. Crim. App. 1996) (noting that the State may include a
plea for law enforcement in its closing argument).

The
jury heard testimony regarding Ross’s 2001 conviction for aggravated assault
with a deadly weapon, Ross’s involvement in an additional assault in which the
two victims identified Ross as the assailant, and Ross’s shootout with
Duncanville police.  In its closing argument, the State asked for enhanced
sentences based upon Ross’s prior convictions for aggravated assault with a
deadly weapon and burglary.  For Ross’s conviction for unlawful possession of a
firearm by a felon, the State requested a sentence from two to twenty years.  For
Ross’s organized crime conviction, the State requested a sentence of
twenty-five to ninety-nine years or life.  The jury found both enhancements
true and returned a maximum sentence on Ross’s unlawful possession of a firearm
by a felon conviction.  On Ross’s organized crime conviction, however, the jury
returned a fifty-five-year sentence.

Although
there is no evidence that any juror actually saw Ross’s handcuffs, there is
evidence that Ross’s handcuffs were visible when he stood up during the first
day of the punishment trial.  Although the State did not emphasize the handcuffing
error and the jury returned less than a maximum sentence on Ross’s organized
crime conviction, the jury returned the maximum sentence on his unlawful
possession of a firearm by a felon conviction.  Thus, we cannot say that the
trial court’s error did not contribute to Ross’s punishment, and we hold that
the trial court’s error was not harmless beyond a reasonable doubt.  See Snowden,
353 S.W.3d at 822; Williams, 958 S.W.2d at 194.  Therefore, we sustain
Ross’s twelfth and thirteenth points and do not reach his fourteenth point on
assessment of court costs in the judgment.[6]  See Tex. R. App.
P. 47.1.

VI.  Conclusion

Having
sustained only Ross’s twelfth, and thirteenth points,[7]
we affirm the trial court’s judgment on Ross’s convictions, but we reverse the
trial court’s judgments as to punishment and remand the case for a new trial on
punishment.

 

 

PER CURIAM

 

 

 

PANEL: 
MCCOY, J. ; LIVINGSTON, C.J.; and MEIER, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: January 4, 2013









[1]See Tex. R. App. P. 47.4.





[2]Likewise, we need not
reach Ross’s sixth and ninth points, in which he complains that the trial court
erred by not instructing the jury on age affecting criminal responsibility
under penal code section 8.07(b) because, in light of our resolution of his
first through fifth points, section 8.07(b) is not the law applicable to the
case.  See Tex. Penal Code Ann § 8.07(b) (West 2011) (prohibiting
criminal prosecution of a juvenile unless the juvenile is certified as an
adult); Tex. R. App. P. 47.1.





[3]The question of whether
the “joint possession” instruction was an improper non-statutory instruction or
an improper comment on the weight of the evidence was not before the court in Duncan. 
See 680 S.W.2d at 560.





[4]The sole exception
occurred when the State examined Patterson after Ross cross-examined him on
both the shotguns and the firearms found in Ross’s car.





[5]Although Porter testified
that the pistol was a Heckler & Koch .45-caliber pistol, he positively
identified the .40-caliber pistol in court as the one that Ross brought to his
store.





[6]We do find it necessary to
note, however, that once a trial court determines a defendant indigent, he is
presumed so for the remainder of the proceedings unless his financial
circumstances materially change.  Tex. Code Crim. Proc. Ann. art. 26.04(p)
(West 2009 & Supp. 2012).  Nothing in the record indicates that Ross’s
financial circumstances materially changed from the time he was declared
indigent until he was sentenced.





[7]Although we sustained
Ross’s seventh point, we overruled his tenth point, which is dispositive of
this issue.